Case 4:21-cv-01258 Document 108 Filed on 02/20/24 in TXSD Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
February 20, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Targa Gas Marketing LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-21-1258 |
| | § | |
| Koch Energy Services, LLC, | § | |
| *Defendant.* | § | |

### MEMORANDUM AND RECOMMENDATION

Pending before the court is Koch Energy Services, LLC's (Koch) Motion for Partial Summary Judgment on Claims of Force Majeure by Affiliates of Targa Gas Marketing LLC (Targa), ECF No. 49, and Koch's Objections and Motion to Strike Targa's Summary Judgment Evidence, ECF No. 56.[1] The motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Koch's objections to evidence are **OVERRULED**, and the motion to strike summary judgment evidence is **DENIED**. The undersigned recommends that Koch's motion for partial summary judgment be **DENIED**.

### *1. Background*

This is a contract dispute between two natural gas marketing companies. *See* Benjamin Branstetter Decl. ¶ 3, ECF

---

[1] In this memorandum and recommendation, the court addresses only the Koch's motion for summary judgment and objections to Targa's evidence. Also pending are Targa's Motion to Exclude Portions of the Testimony of David Lerman, ECF No. 63; Targa's Motion for Partial Summary Judgment, ECF No. 65; Koch's Motion to Exclude Targa's Expert Bob Broxson, ECF No. 69; Koch's Motion to Exclude Certain Opinions of Targa's Experts Kris L. Terry and John C. McBeath, P.E., ECF No. 70, and Koch's Objections and Motion to Strike Certain Portions of Targa's Summary Judgment Evidence, ECF No. 88. These other pending motions will be addressed separately in due course.

No. 53-1; Cameron John Kasel Dep. at 3, ECF No. 53-2. The parties contracted for Targa to sell Koch 45,000 million British Thermal Units (MMbtus) of natural gas each day during the period November 1, 2020, through March 31, 2021. Kasel Decl. ¶¶ 3–4, ECF No. 49-4; ECF Nos. 50-7, 50-8, 50-9;[2] Branstetter Decl. ¶ 6, ECF No. 53-1. In mid-February 2021, Winter Storm Uri moved across Texas and Kansas, among other states, bringing freezing temperatures and freezing precipitation and causing power and water outages.[3] Because gas volumes at Targa's affiliates that supplied the gas to be delivered fell by more than eighty percent, Targa lost its gas supply and could not meet its delivery obligations to Koch. Branstetter Decl. ¶¶ 7–8, ECF No. 53-1.

On February 17, 2021, Targa sent Koch a letter claiming a force majeure event beginning on February 12, 2021. ECF No. 53-4 at 2. The letter claimed that the natural gas suppliers and other facilities from which the gas supply for sale to Koch would have been sourced were experiencing various operational and mechanical issues because of the freezing weather. *Id.* Koch sent a letter to a nonparty also claiming that Winter Storm Uri was a force majeure event that had impaired Koch's ability to meet its delivery obligations. *See* ECF No. 53-6 at 2. The parties thus agree that Winter Storm Uri interfered with the delivery of natural gas. The central dispute in this case, however, is whether Winter Storm

---

[2] Both parties attached what appear to be identical versions of the Base Contract. *See* ECF Nos. 50-7; 53-3. For simplicity, the court cites only to the copy that Koch submitted with its motion, ECF No. 50-7.

[3] The court takes judicial notice of the destructive weather and damage that Winter Storm Uri caused as it crossed the Southern United States. *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

2

Uri constitutes a covered force majeure event under the terms of the parties' March 18, 2014 Base Contract for Sale and Purchase of Natural Gas (Base Contract).

On March 12, 2021, Koch sent Targa a letter rejecting Targa's claim of force majeure. *See* ECF No. 53-7 at 2 ("Although Winter Storm Uri was a significant event, Koch disagrees with [Targa's] specific assertions that [the reduced deliveries to Koch] were caused by Force Majeure as defined in the [Base Contract]."). As the basis for rejecting Targa's claim of force majeure, the letter stated that, under the parties' agreement, Targa "was required to purchase replacement [g]as and deliver in accordance with its Firm obligation(s)." *Id.* Koch enclosed an invoice asserting damages in the amount of $29,809,315. *Id.* at 3.

On March 19, 2021, Targa filed this suit in Texas state court seeking declaratory judgment that it had no contractual obligation to sell Koch natural gas during Winter Storm Uri. *See* ECF No. 1-6. On April 15, 2021, Koch removed the case to this court. *See* ECF No. 1. Koch counterclaimed for breach of contract, alleging that Targa improperly declared force majeure by failing to provide required details and by failing to deliver even though other sources of gas were available. ECF No. 12. In the motion for partial summary judgment presently under consideration, Koch argues that Targa's force majeure claim was invalid because it was based on its affiliates claims of force majeure. ECF No. 49 at 5. Targa disagrees.

### *2. Summary Judgment Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018)

3

(quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court views all evidence and reasonable inferences in the light most favorable to the opposing party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, [and] 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Nor is the "mere existence of a scintilla of evidence" sufficient; "there

4

must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### *3. Koch's Objections to Evidence*

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"). Declarations are competent summary judgment evidence if they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Koch offers an omnibus set of objections to statements in the declarations of Benjamin Branstetter, Vice President – NGL Supply and Business Development for Targa Resources Corp., ECF No. 53-1, and Patrick Ruffing, Director of Gas Marketing for Targa Resources Corp., ECF No. 54-3. *See* ECF Nos. 56, 56-1. Koch raises objections based on impermissible extrinsic evidence for interpretation of the Base Contract and objections based on the declarant's lack of personal knowledge. *See* ECF Nos. 56 at 2–5; 56-1 at 1–2. Koch also raises objections to the declarations based on speculation, unsupported conclusory opinions, and legal conclusions. *See* ECF Nos. 56 at 2–5; 56-1 at 1–2. Finally, Koch raises objections to government documents, articles, and reports about Winter Storm Uri based on hearsay and relevance. *See* ECF Nos. 56 at 6; 56-1 at 2–4.

The court relies on portions of Branstetter's and Ruffing's declarations only for factual background. The facts upon which the

5

court relies are capable of being presented at trial in admissible form. Because the court finds the portions of the Base Contract addressed in this memorandum and recommendation to be unambiguous as discussed below, the court need not consider any extrinsic evidence. The court is responsible for interpreting the Base Contract in the context of this case and thus is not relying on any witness's legal or other opinion. The court thus overrules Defendants' objections to the statements in Branstetter's and Ruffing's declarations. The court has taken judicial notice of the destructive weather and damage that Winter Storm Uri caused and therefore need not consider the government documents, articles, and reports as evidence.

For purposes of the pending motion for partial summary judgment, Koch's objections are overruled, and its motion to strike is denied. The court expresses no opinion about the admissibility of the objected-to evidence at trial.

### *4. Discussion*

The parties' Base Contract was drafted based on a form contract developed by North American Energy Standards Board (NAESB). *See* ECF No. 50-7; *cf.* ECF No. 50-1 at 10 (referring to the Base Contract as "the NAESB contract," which is at issue in this litigation). The parties negotiated multiple special provisions that form a part of the Base Contract. *See* ECF No. 50-7 at 15–17. Pursuant to the Base Contract, the parties entered two transaction confirmations in September 2020 that covered gas delivery during the period at issue. *See* Kasel Decl. ¶ 4, ECF No. 49-4; ECF Nos. 50-8, 50-9; Branstetter Decl. ¶¶ 6–7, ECF No. 53-1. Together, those transaction confirmations provided that Targa would sell Koch 45,000 MMBtu/day of natural gas on a "firm" basis during the period November 1, 2020, through March 31, 2021. *See* ECF Nos. 50-8, 50-9. Koch raises two arguments in support of declaring that

Targa's force majeure claim was invalid because it was based on its affiliates' claims of force majeure: (1) the plain language of the force majeure provisions as amended exclude that type of claim; and (2) the parties' course of performance confirms the parties' intention to exclude force majeure claims based on Targa's affiliates' claims. The court rejects both arguments.

### A. *Force Majeure Provisions*

The Base Contract defines "Firm," in relevant part, to "mean that either party may interrupt its performance without liability only to the extent that such performance is prevented for the reasons of Force Majeure[.]" ECF No. 50-7 at 5.

The force majeure provisions are in Section 11 of the Base Contract. ECF No. 50-7 at 11. Section 11.1 provides, with exceptions not relevant here:

> [N]either party shall be liable to the other for failure to perform a Firm obligation, to the extent such failure was caused by Force Majeure. The term "Force Majeure" as employed herein means any cause not reasonably within the control of the party claiming suspension, as further defined in Section 11.2.

ECF No. 50-7 at 11. Section 11.2, in turn, provides a nonexclusive list of force majeure events:

> Force Majeure shall include, but not be limited to, the following: (i) physical events such as acts of God, landslides, lightning, earthquakes, fires, storms or storm warnings, such as hurricanes, which result in evacuation of the affected area, floods, washouts, explosions, breakage or accident or necessity of repairs to machinery or equipment or lines of pipe; (ii) weather related events affecting an entire geographic region, such as low temperatures which cause freezing or failure of wells or lines of pipe; (iii) interruption and/or curtailment of Firm transportation and/or storage by

> Transporters; (iv) acts of others such as strikes, lockouts or other industrial disturbances, riots, sabotage, insurrections or wars, or acts of terror; and (v) governmental actions such as necessity for compliance with any court order, law, statute, ordinance, regulation, or policy having the effect of law promulgated by a governmental authority having jurisdiction. Seller and Buyer shall make reasonable efforts to avoid the adverse impacts of a Force Majeure and to resolve the event or occurrence once it has occurred in order to resume performance.

*Id.* As originally drafted in the NAESB form Base Contract, Section 11.3 listed the following circumstances, which, to the extent that any or all affected a party's performance, prohibited that party from claiming force majeure:

> (i) the curtailment of interruptible or secondary Firm transportation unless primary, in-path, Firm transportation is also curtailed; (ii) the party claiming excuse failed to remedy the condition and to resume the performance of such covenants or obligations with reasonable dispatch; or (iii) economic hardship, to include, without limitation, Seller's ability to sell Gas at a higher or more advantageous price than the Contract Price, Buyer's ability to purchase Gas at a lower or more advantageous price than the Contract Price, or a regulatory agency disallowing, in whole or in part, the pass through of costs resulting from this Contract; (iv) the loss of Buyer's market(s) or Buyer's inability to use or resell Gas purchased hereunder, except, in either case, as provided in Section 11.2; or (v) the loss or failure of Seller's gas supply or depletion of reserves, except, in either case, as provided in Section 11.2.

*Id.* The parties amended the Base Contract by adding a sixth clause to Section 11.3, which prohibits, "(vi) a claim of Force Majeure, as described in clauses (i) through (v) above, made by an

8

Affiliate supplying or receiving the Gas delivered under this Contract." ECF No. 50-7 at 16; *see also* ECF No. 49 at 10.

The parties agree that New York law governs the interpretation and performance of the Base Contract. *See* ECF No. 50-7 at 3, 12; *cf. Dynamic CRM Recruiting Sols., L.L.C. v. UMA Educ., Inc.*, 31 F.4th 914, 918 (5th Cir. 2022) (finding a contractual choice-of-law provision valid where neither party argued that it was invalid under Texas law). Under New York law, "[t]he fundamental, neutral precept of contract interpretation is that the agreements are construed in accord with the parties' intent[.]" *Donohue v. Cuomo*, 184 N.E.3d 860, 866 (2022) (quoting *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 170 (2002)). What the parties say in their contract is the best evidence of what they intended. *Id.* (quoting *Greenfield*, 780 N.E.2d at 170). Extrinsic evidence is generally inadmissible "to add to or vary the writing" unless the "court finds an ambiguity in the contract." *Id.* (quoting *W.W.W. Assocs. v. Giancontieri*, 566 N.E.2d 639, 642 (1990); *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 436 (2013)). "The words and phrases used by the parties must, in all cases involving contract interpretation, be given their plain meaning." *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014). If the contract language has a "definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion[,]" it is unambiguous. *Id.* at 867 (quoting *Greenfield*, 780 N.E.2d at 170–71). If the agreement is "complete, clear and unambiguous on its face[, it] must be enforced according to the plain meaning of its terms." *Kolbe v. Tibbetts*, 3 N.E.3d 1151, 1156 (2013).

While contractual force majeure clauses under New York law provide a narrow defense, the contours of force majeure as defined in a contract "dictate the application, effect, and scope of force majeure." *Kel Kim Corp. v. Cent. Mkts., Inc.*, 519 N.E.2d 295,

9

296 (N.Y. 1987); *Constellation Energy Servs. of N.Y., Inc. v. New Water St. Corp.*, 46 N.Y.S.3d 25, 27 (N.Y. App. Div. 2017). "Force majeure clauses are to be interpreted in accord with their purpose, which is 'to limit damages in a case where the reasonable expectation of the parties and the performance of the contract have been frustrated by circumstances beyond the control of the parties[.]'" *Constellation Energy Servs. of N.Y., Inc.*, 46 N.Y.S.3d at 27. "Ordinarily, only if the force majeure clause specifically includes the event that actually prevents a party's performance will that party be excused." *Kel Kim Corp.*, 519 N.E.2d at 296 (emphasis omitted).

Section 11 of the Base Contract defines the contours of force majeure in considerable detail. The Base Contract relieves a party of liability for failure to perform a firm obligation when that failure is caused by force majeure. *See* ECF No. 50-7 at 11. The nonexclusive list in Section 11.2 of circumstances that constitute force majeure events includes "weather related events affecting an entire geographic region, such as low temperatures which cause freezing or failure of wells or lines of pipe." *Id.*; *see also LNG Ams., Inc. v. Chevron Nat. Gas*, Civil Action No. H-21-2226, 2023 WL 2920940, at *4 (S.D. Tex. Apr. 12, 2023) (finding, absent any argument to the contrary, that the defendant could have declared force majeure during Winter Storm Uri under identical contract language). Winter Storm Uri was a weather event that affected an entire geographic region and that, according to Targa's force majeure notice, caused failure of wells and freezing of lines of pipe. *See* ECF No. 53-4. Thus, the force majeure clause specifically includes the event that Targa claims caused a loss in its gas supply. Nothing in the provision requires that the wells or lines of pipe that froze and disrupted the supply be under Targa's control. *See* ECF No. 50-7 at 11. The plain language of Section 11.2 in no

way circumscribes Targa's right to invoke force majeure under these circumstances. *See id.*; *cf. Kel Kim Corp.*, 519 N.E.2d at 296 (stating that, where a contractual force majeure provision "specifically includes the event that actually prevents a party's performance[,]" that party is excused).

Koch does not dispute that Winter Storm Uri caused the failure of wells and freezing of lines, that Targa lost gas supply as a result, or that Winter Storm Uri was a force majeure event. Rather, Koch characterizes Targa's force majeure claim as improperly based on its affiliates' claims of force majeure. Koch points to no evidence to show that Targa's claim of force majeure was based on any affiliate's force majeure claim. More importantly, the language of Section 11.2, as discussed above, provides Targa with a direct entitlement to claim force majeure under the circumstances presented here—*on its own behalf.* The language is plain. Whether Targa's affiliates claimed force majeure is simply not relevant to Targa's right to do so.

Koch also argues that Section 11.3, which prohibits a party from claiming force majeure when any of the listed circumstances affected performance, prohibits "claims of force majeure by affiliates." ECF No. 49 at 15. The court finds Koch's second argument unavailing.

Unlike the nonexclusive list of circumstances in Section 11.2, Section 11.3, as amended, includes a finite, exclusive list of six circumstances. *See* ECF No. 50-7 at 11. Among other circumstances, the list includes failure to remedy the condition and resume performance with reasonable dispatch, economic hardship, and loss or failure of the seller's gas supply for a reason other than the force majeure event. *See id.* The sixth clause, added by amendment after negotiation, addresses claims of force majeure by affiliates. ECF No. 50-7 at 16. It prohibits a party to the Base

11

Contract from claiming force majeure "as described in clauses (i) through (v) above, made by an Affiliate supplying or receiving the Gas Delivered under this Contract." *Id.* The parties agree that Targa suggested that this provision be added, but they disagree on the proper interpretation.[4] *See* ECF No. 49 at 10, 14–17; ECF No. 53 at 6, 15–20; Branstetter Decl. ¶ 5, ECF No. 53-1.

The disagreement centers on the meaning of the phrase in the sixth clause that reads "a claim of Force Majeure, *as described in clauses (i) through (v) above*[.]" ECF No. 50-7 at 16. Koch argues that the sixth clause in Section 11.3 refers to the five clauses in Section 11.2 that list circumstances constituting force majeure events. Targa argues the sixth clause refers to the five immediately preceding clauses in the same section that describe circumstances for which a force majeure claim is prohibited.

Considering the content and placement of the sixth clause, the court agrees with Targa. The meaning of the sixth clause is definite and precise. The sixth clause refers to the other clauses in the same section. It prohibits any force majeure claim by an affiliate under the same circumstances as Targa is prohibited from making a force majeure claim. Several observations bolster this interpretation.

First, as mentioned, the phrase "as described in clauses (i) through (v) above" is found in the sixth listed circumstance in the same section immediately following the other five circumstances. The word "above" plainly refers to the clauses that are most closely above, not five clauses in an entirely different section. Had the parties intended to refer to an entirely different section, they could have done so.

---

[4] Although they disagree about the meaning, neither party argues the provision is ambiguous. *See* ECF No. 49 at 15; ECF No. 53 at 15.

Second, this interpretation is consistent with the use of the word "clauses" rather than "section" following the word "above." That is, section 11.3 contains six clauses, the last of which refers internally to the first five. Reference to section 11.2, which also contains five clauses could simply have said "section 11.2, above." To interpret "clauses (i) through (v) above" to mean "section 11.2, above" would require the court to find that the parties employed confusing language instead of clear language.

Third, when the sixth clause of Section 11.3 is read in conjunction with all of Section 11.3, it becomes even more certain that the sixth clause is not referring to Section 11.2. The fourth and fifth clauses of section 11.3 both refer to "Section 11.2" rather to the "clauses (i) through (v) above." Thus, as the court alluded to in point one, above, the parties knew how to refer to "section 11.2, above" when they wanted to.

Fourth, Section 11.2 provides a nonexclusive list of circumstances constituting force majeure events while the last sentence of Section 11.3 refers to prohibited force majeure *claims*. The debated sixth clause also refers to *"claims"* of force majeure.

Finally, had the parties intended the debated clause to have the meaning Koch ascribes to it, they could simply have omitted it. Thus, Koch's interpretation would render "as described in clauses (i) through (v) above" superfluous, which is an unsupportable interpretation of the Base Contract. *See Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Tr. Co. of N.Y.*, 727 N.E.2d 563, 566–67 (N.Y. 2000) (stating that rendering any portion of the contract superfluous is not supportable under standard principles of contract interpretation).

The court concludes that force majeure claims by affiliates are excluded only to the same extent as are force majeure claims made by Targa.

## B. *Course of Performance*

Koch's Director of Midwest Trading, Cameron John Kasel, declared that the parties entered various transaction confirmations under the Base Contract. Kasel Decl. ¶ 7, ECF No. 49-4. Kasel recounted that, in 2018, he became aware that Targa had added language to the transaction confirmations stating that gas for those transactions was being supplied or received by a Targa affiliate and that a force majeure event affecting that supply or receipt may result in Targa's claiming force majeure. *Id.* at ¶ 8. Kasel objected to the language, and Targa did not include it in future transaction confirmations. Koch argues that this interaction constituted a course of performance that confirmed any affiliate's claim of force majeure would not excuse Targa's nonperformance.

As discussed in Section 2, Targa's claim of force majeure was based on a force majeure event that was specifically included in the contractual force majeure provisions of the Base Contract. Again, Koch is characterizing Targa's force majeure claim as one by an affiliate. Neither the Base Contract nor the evidence supports that characterization. Based on its characterization of the claim and its proffered interpretation of the Base Contract, Koch argues that Kasel's complaint and Koch's apparent acquiescence somehow changed the contract's plain meaning. As discussed above, the Base Contract does not exclude affiliate force majeure claims except to the same extent that Targa's force majeure claims are prohibited.

Even if this were not the case, summary judgment in Koch's favor would still not be appropriate. The parties agree that New York's Uniform Commercial Code applies to the transaction confirmations. *See* ECF No. 49 at 18; ECF No. 53 at 21. Under New York law, "[a] 'course of performance' is a sequence of conduct

between the parties to a particular transaction that exists if" both the agreement involves repeated occasions for performance by a party and "the other party . . . accepts the performance or acquiesces to it without objection." N.Y. U.C.C. Law § 1-303(a). Whether the above interaction between Kasel and Ruffing and the subsequent omission of the objected-to language qualifies as course of performance is a disputed issue. The parties' briefs rely on disputed evidence and raise inferences which the court is not permitted to resolve on summary judgment. *See* ECF No. 49 at 19–20; ECF No. 53 at 21–23. Simply put, Koch has failed to meet its burden of showing an absence of genuine issues of material fact on the parties' course of performance. The court thus need not reach the legal implications of the course of performance argument.

Koch's motion for partial summary judgment should be **DENIED**.

### *4. Conclusion*

The court **RECOMMENDS** that Koch's motion for partial summary judgment be **DENIED**. Koch's objections to the summary judgment evidence are **OVERRULED**, and the motion to strike is **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on February 20, 2024.

Peter Bray
United States Magistrate Judge